Good morning, Your Honors. I'm Stuart Senator of Munkertals & Olson representing Verizon Communications and GTE Corporation. So tell us what's going on here. These plaintiffs, all former employees of GTE Corporation, were participants in GTE's ESOP, which was an ERISA plan. Why was it an ERISA plan? How do we know it's an ERISA plan? Well, we have the plan documents. Okay, you have a document, but an ERISA plan has a definition, and it has to be, as I understand it, it is not just an employee benefit plan, as you know. It has to be an employee benefit plan, which provides essentially contingent benefits for disability, retirement, severance, and so on. Here we have money that is being – or stock that is being transferred and allocated to individuals and held in their name and, moreover, have some kind of an ownership interest because they can vote it immediately. And, moreover, they can, after seven years, without any of those contingencies, get the distribution. Is that not right? It's partially right. This is a plan where – Has this ever been adjudicated to be an ERISA plan? Is there any case of something like this being adjudicated to be an ERISA plan? Well, let me – let me start with the point that there's never been any dispute in this case that it is an ERISA plan. I understand that because the defendant – but we have a jurisdictional problem, and if it's not an ERISA plan, we don't have jurisdiction. Right. But at the beginning, they can – it's not a plan where the stock is – or the money is just put into the plan and then they can withdraw that. But they can withdraw it seven years later without any of the ERISA contingency. Under certain circumstances, there's a provision that they can withdraw within seven years. Otherwise, that they can request some withdrawals. They can withdraw on their death, disability, separation for the company, or they're required to withdraw when they reach age 70 and a half. But it's their money that they can get within the seven years. And I, myself, have done an awful lot of ERISA work. I've not seen an ERISA plan that looks that way. At least it seems to me, and we'd have to do some briefing and some understanding of this, because I've never seen one like it. Have you? I mean, is there any case you can point to that says that something in which money is allocated, the stock's allocated, you can bulk the stock and you can get the stock out in seven years with none of the ERISA contingencies as an ERISA plan? I believe, Your Honor, that there was only – I'm turning now to try to get to that provision about the seven years, because it wasn't – well, let me get to it first. Let me suggest that if we're going to pursue this, we'll ask for further briefing, and why don't we get to the issues at work first. That's fine, Your Honor. Does it matter if it's an ERISA plan? Well, I think once it's been conceded to you. I'm sorry, Your Honor. I know it might matter in terms of removal in one sense, but how do you get it – get around Caterpillar's approach? They have a well-pleaded complaint. They're claiming State-caused action only. They don't have to go to the plan itself. And you say, oh, yeah, but it's a plan. That sounds a lot like the Caterpillar problem. It's completely preempted under the series of cases. It's not preempted. It's only preempted if they're – if they're suing on your ERISA plan. But it's not completely preempted if they're bringing a different lawsuit, which they purport to be doing. They might be wrong, but that's what they purport to be doing. They can't recharacterize it and, therefore, avoid the fact that it's essentially a claim for benefits under their ERISA plan. So why is it a claim for benefits? They have alleged – this is also a 1236 case, and another version, like a 1236 case, in which we're dealing with a complaint. And their complaint says that we are owners of the stock. Now, you say, well, you're only owners of the stock because of the ERISA plan. Well, that certainly wouldn't matter if it were actually distributed. It may or may not matter if it were allocated, where they got the stock profit. They're just not talking about that in their complaint. They're saying we are owners. And maybe they're not owners. Maybe that turns out to be wrong. But that's what they're alleging. And in all of their complaints, they allege that. And they're alleging that you mishandled and improperly transferred and failed to deliver the stock. And I don't know what failed to deliver means. Maybe it means distribute. But it may also mean we are owners on the books of the company, but they never gave us the stock certificate. If that were – for all we know, there was an internal distribution that actually occurred, but you never gave them the stock certificate. So from anything that's in this complaint, there's nothing that seems to implicate necessarily – But they are claiming they never got the stock. That's the core of their complaint is we were entitled to stock, as it turns out, under this ECOP. What does stock mean? Does it mean a piece of paper, a stock certificate? Or does it mean the ownership interest? They allege that they had the ownership interest all along. They say that exactly. They allege they should have been owners. They were entitled to be owners. No, they don't. They say they had ownership interest, but you never gave them the stock. They say plaintiffs in class never received the stock. They never received the benefits. We held it as a fiduciary. We held that – those securities. It was in our custody. It was never turned over to them. And if this were a typical garden variety and characterized as a case where they're just – where they are already owners of stock, and therefore they're just entitled to these sorts of claims – But it's the same thing. Plaintiffs never received notice or any information regarding their stock ownership interest in GTE. They're not – they're saying we failed to inform of your stock ownership. They're not saying that they didn't own it. They're saying that you mishandled their ownership. They're saying they didn't get it. They didn't specifically get it. That's a different question. Well, if you could – if you could transform a claim for benefits by saying we never got it, we really should have gotten it, that would apply in any case under this ESOP. It would apply – What were the benefits here? What were the benefits? The benefits were there was stock held in these accounts, stock allocated to particular individuals. Did the workers know that this was being done? Yes. They received yearly statements. They received yearly statements. Under the plan. They would receive yearly statements saying this many shares, this many fractional shares, this much cash is allocated to your – to you under the plan. But it's allocated and being managed by the fiduciary. Individually. They received individual statements. But then the fiduciary, the trust, would be the one that voted in the proxies that received the corporate communications. I thought that they could vote their own stock. I thought that that's what the plan said. No, the plan says that they will be given – that the corporation will give notice to the plan, to the fiduciary. Then, in turn, the plan will give notice to the individuals and try to give notice in a similar form to that by which the corporation or the plan got notice. Then it's a two-step process. The employee tells the trustee how the employee wants his or her stock voted. That certainly suggests some ownership interest. I mean, isn't there an SEC problem with somebody who isn't really an owner voting stock? Well, they are – they are not voting the stock. They are telling the fiduciary how they want the stock voted. And under the plan, the fiduciary has committed to voting it in that manner. But what were they going to get in the end? Say that they retired. Say they retired, and then at, say, age 70 and a half, if you're required to or earlier, they would make a request to start having benefits paid out to them. But what were they going to get? All the – they were going to get all the stock at that time? They would get – they could get it paid out in stock, yes. They'd also have some cash from dividends and the like, and they could get that paid out. There were fractional shares that they were, quote, were allocated to them. Those would be converted to cash and then paid out to them as well. I'm reading from the original complaint now. It says, within the last 18 months, plaintiffs learned that they owned stocks in GTE that had been transferred and sold without their knowledge. That's the allegation. They said that they were minority shareholders. They said that they mishandled and failed to properly transfer shares of the stock. They say that they were unaware of the stock that had been – they did not receive and were unaware of stock that had been improperly transferred. They didn't receive indicia of stock ownership. But, of course, there's a difference between indicia of stock ownership and stock ownership. And they repeatedly alleged that they were owners of the stock. So as a complaint, looked at as a complaint, it's very hard to tell why this depends on the incident. Well, if ownership, as they say, is a legal conclusion, you have to look at the facts that they allege in support of that conclusion. And I refer you to paragraph 42. Each of the class members entered into an employment relationship with GTE that entitled them to GTE and Verizon's fringe benefits on a nondiscriminatory basis as set forth in the employee handbook, which could change if GTE and Verizon sold discretion as the companies deemed necessary. Each and every plaintiff and class member was unaware of the stock in the company that had been assigned to them. GTE, Verizon, and defendants either negligently or intentionally failed to inform plaintiffs and class members of that stock ownership. Then we have a number of other paragraphs that are the same thing. And this is a fringe benefit, and you fail to tell us about the fringe benefit. If, for example, the stock had actually, when they left, had been distributed as it should have been, this whole paragraph would apply to that, right? If the stock had been distributed to them, if they had made a claim to the plan and said, I terminated my employment, please distribute this, then they would have gotten that stock. There's a problem. They're saying they didn't. So that's what the complaint is about. I agree. They're saying they did not get that stock from the plan that they should have gotten. And that's a claim for benefits. They're saying, or what they should have done is they should have gone to the plan, and they could have done this, and filed a form and said, you've been sending me these yearly statements saying I'm entitled to X number of shares, now pay up. Okay. Here's the problem. There are all kinds of ways that employers can give employees stock. There are 401K plans. There are other kinds of stock purchase plans. There are all kinds of ways. They don't have to be ERISA plans. I'm not saying whether this one is or not. That's not even relevant to my question or point. So if the employer said, I will give my employees 10 shares of stock each year, that's all. That's what it does. There you have a non-ERISA plan, probably, with the stock coming out to the employees. Their pleading could as well cover that situation as it does cover an ERISA plan situation. That's what they pled. It seems to me that when they come in and make that, I think it's a problem anyway, if they come in and make that kind of pleading in state court, then you can say, no, this would have come to them under an ERISA plan, and you can do that as a defense. But that's what Caterpillar was about. Sometimes they've chosen their pleading. They can plead and say what they want. They might turn out to be dead wrong, and you have to defend. That's not to make it removable. That's my point. I agree that we can assert a defense of preemption in state court. I also believe that when they are in fact claiming under an ERISA plan, we can remove under the well-pleaded complaint rule that if they have properly pleaded the complaint, the complaint would have disclosed, as they say, there's a benefit plan under the employee handbook, and it would have attached that employee handbook. It would have shown what the benefit plan was, and it would have shown that it's an ERISA plan. And, indeed, on the plan summary document ---- But that's not what they're ---- their claim is that they own the stock and that you gave it to the state. That's where their focus is. Now, you can come back and say, well, no, you didn't own the stock. And that way you would really have an ERISA plan defense at that point. You didn't own the stock because you weren't entitled to an ERISA plan. But they say that they own the stock. Well, I would say, Your Honor, that that puts a huge hole in the ERISA preemption line of cases. The cases do not, you know, continue to say you can't arrest up an ERISA plan. But the focus in this case is on the movement from the company to the state and not on getting the money out of the company, out of the branch of a gentleman. That's where they're placing the focus. Now, you may have a defense that, well, you can't complain about us giving something to the state that you never owned, but their complaint is we owned it and you gave it to the state. Now, you can disprove that. You never owned it. But that's completely different than most jurisdictions because the focus is over here. It's on the fact that we owned something you gave to the state, not on the fact that you kept it for yourself rather than giving it to us. Whatever reason, they didn't get it. There was a benefit they were entitled to or they claimed they were entitled to as an employee fringe benefit, which turns out to be the ERISA plan. They claimed they were entitled to it, and they claimed they didn't get it. That is the essence. And they claim that they are. Well, okay. I understand what you're saying. I mean, I understand they're saying we should have been shareholders, and they're even saying, well, we think we, quote, are shareholders because the plan gave us entitlement to this. But the ERISA preemption test should not depend upon how they characterize that relationship. It should depend on the underlying factor. If, for example, the allocation that did definitely occur were sufficient to give them an ownership interest for purposes of state security laws, then why would ERISA or ESA matter at all if they could prove that up? I'm sorry, Your Honor. I just didn't hear that. If the allocation that did occur were sufficient to give them an ownership interest for purposes of state or federal security law, for example, then why would anything about ERISA matter? They had already gotten something. I don't believe that it did, Your Honor. I believe under the plan. That's what we're going to litigate. Oh, that's what you're going to litigate. I'm sorry? That's what you can litigate. Well, but you've got the plan document that puts the shares in the plan. I'm sorry. Again, I didn't hear. What I'm saying is that's the merits of the case. The complaint would cover that allegation, would it not? The complaint covers it. It alleges some legal conclusions. Under the case law, you're also allowed to, and this Court has said, should consider the plan documents in conjunction with our motion as the district court did. And under the plan documents, you see that the shares do indeed go to the plan. They're held by the trust. They are paid out at age 70 and a half, paid out at termination of employment and the like. Counsel, let me ask you a slightly different question. It may be on the same basic path. They've now put in a federal securities claim. I take it that if you're correct that this is really an ERISA claim or it's really an ERISA plan situation that's being thought about, their federal securities claim is also no good, not because it's preempted, but just because you can't bring federal securities claims for securities in an ERISA plan. I agree for a number of reasons they have no federal securities. Their federal securities claim fails. Okay. I mean, and fundamentally, yes, they're not buying and selling securities, which is what the federal securities law covers in a variety of different contexts, and they haven't come up with any theory for how they are falling underneath that federal securities law. Okay. So tell me what happened here. Now, the shares that were allocated to the fund were earmarked for the various employees. So they ended up with the shares that were earmarked for the various employees and with the trustee. How did they all end up with the State? Well, Your Honor, we didn't get into discovery, and we didn't ‑‑ I don't think I can, consistent with the record, give you some sort of explanation of how and if some shares ended up with the State and what happened with those shares. I can tell you under the plan, if a shareholder, and this is page 247 of the excerpts, if a shareholder ‑‑ I'm sorry. If a plan participant thinks they're entitled to benefits, thinks they're a loss to the corporation, the plan says those shares go back into the general fund of the plan. Once the participants are lost to the plan, the plan can't find them, to reduce overall plan expenses, meaning the company doesn't have to contribute proportionately more shares when there are more participants in the plan. But then if the person, if the participant comes back and says, here I am, you lost me, but here I am at any time after that 36‑month period, at any time, they just make a claim and say, here I am, the shares from the plan will be reinstated. So it doesn't really matter what the company is internally doing and how they've handled these shares under the plan if a claim is made and it's a valid claim. The fact that the person has been lost to the corporation is irrelevant under the ESOP plan. The benefits are reinstated. So how did the shares end up in the coffers of the State? I don't know, Your Honor. You don't know? If the company sent some shares to the State with these folks' names on it, that's, in our view, a separate issue. They never came and made a claim. But that's the issue that the lawsuit is about. That's the only issue that the case is about, as I understand it. Well, they said we, as employees, never got this benefit to which we were entitled to. No, they didn't say that. They said we got the benefit, but you gave it to the State. Well, they said we never received it. They're saying we should have gotten it. You maybe internally allocated it, but you never sent it to us. And you gave it to the State. And you gave it to the State. What we did with it, you know, assuming these allegations, what we did with it is our problem. In that circumstance, or the plan's problem, if they haven't made a claim to the plan, they make a claim to the plan, and that's how it's dealt with. Yes, I did, but I mean, maybe there's a conceptual question here, which is I'm reading this complaint in a Conley v. Gibson way, i.e., is there any conceivable theory on which it could succeed? Now, is there anything wrong with reading the complaint in this context in that fashion? I think you have to look at it in conjunction with ESOP documents under Perino and the other cases that allow you to look at the plan documents. And I don't think that that's a reasonable reading of the complaint in conjunction with the plan documents. But they haven't brought in the plan documents. You have. Correct. Just like in Perino there, where somebody was claiming benefits, and the defendant came in and said, here are the plan documents on Rule 12b-6. And of course, after removal, the same scenario we have here, and the Court said it's fine to consider these. But even given the plan documents, there are still several ways that you could read this complaint, even given the plan documents. One of them is this was allocated, and the allocation is sufficient to give me an ownership interest under the state and federal statutes that I'm claiming under it. That may be wrong, but it's an allegation. The second one is that, in fact, it was distributed to me under the plan, except that I never got the piece of paper. That's another way one could possibly read it. If you read it either of those two ways, then it seems to me the plan drops out. And then you have legal questions about whether there was whatever ownership interest they had at any particular time was properly distributed to the state or not. And for us to be making – accepting your version of what this complaint might mean, except the other, seems to me to be contrary to notice pleading and to Comey v. Gibson and to 75 years of law. Well, I think the response to that, Your Honor, is that you're taking their legal conclusions, or their allegations of law, if you will, about ownership and things of that sort, as sufficient. Whereas I'm saying, well, you have to look at the allegations of facts, and you can't just say, well, then they allege this legal conclusion and, therefore, that constitutes ownership sufficient under the securities law. You have to look at the facts and say, under these facts, they're saying there was an employee benefit plan, I was entitled to something under that plan, I didn't get it. And now here's what I understand to be the reasons why I didn't get it in their internal machinations, but I didn't get it. And my point is that that I didn't get it is the essence of their claim. The further ambiguity is those who are dealing with the stock, about what does I didn't get it mean. Does it mean I didn't get the piece of paper, or does it mean that it was never on the books of the company? I was not recorded as an owner. That's not clear either. They're saying, I didn't get anything. I never received a single thing. Whatever it is I should have gotten, I got nothing. And, indeed, the reason they're so emphatic about that is to get around their statute of limitations problem. They're saying, or they're trying to say, I was completely not on notice of this. I didn't get anything. I never heard anything. And for that you're relying on paragraph 42 of the original complaint? That's one of the paragraphs. Paragraph 25, plaintiffs in class never received notice or any information regarding their stock. Paragraph 28, Verizon, GTE and Verizon mishandled and altogether failed to deliver the stock. Paragraph 35B, GTE, Verizon and defendants negligently or intentionally failed to inform plaintiffs and class members of their stock ownership. Paragraphs 101. Let's suppose, would this scenario be consistent with the complaint if it existed? You, the company, in fact distributed this money to these individuals on your book, but the secretary forgot to send them any notice of that or any piece of paper recording their stock ownership. Would that be consistent with their allegations? I think it would be. I wouldn't say it's inconsistent with their allegations. I'm sorry? I wouldn't say it's inconsistent. They're saying, we didn't get anything. For that scenario, doing a Howley v. Gibson on this, it states a nonpreemptive complaint. And, you know, then if that's not true, they lose. Under the variety of cases that we cited in our brief about dressing up an ERISA claim, you can't take an ERISA claim saying we should have gotten these benefits, dress it up and say, but in reality we're talking about something different, and turn it into a state law case. And my point is here, you know, say you complain to a business about I never got something, and the business says, oh, well, let me tell you about how we screwed up. And I'm not saying that my client screwed up. I'm taking allegations of the complaint. It's true here. The business says, let me tell you how we screwed up and why you didn't get it. Your response is, I don't care why you screwed up. Just fix the problem and give me what I'm entitled to. Your entitlement to stock ownership has its own ambiguity. I mean, people lose records of stock ownership all the time, but they don't lose the ownership interest. And these people never got those records to lose. That's what their complaint is. They didn't get the ownership interest. I'm sorry? That doesn't mean they didn't get the ownership interest. Well, they were clearly, or according to the allegations and the planned documents, they would have been allocated some sort of ownership interest that the fiduciary, that the trust, the RISA trust would have then had control over and had sitting in the trust's name but allocated in internal accounts to these individuals. That would have been there. But I guess I'll sum up because my time is up. Is there anything in the trust documents that talks about shares being distributed to the states, to the states, whatever you want to call it? There is not, Your Honor. What? There is not, Your Honor. There's nothing there. It does not say shares will be distributed to the states in this document. Well, is there any provision in there that talks about transferring ownership of shares to the states under whatever circumstances? No. The provision for the lost beneficiaries talks about if a beneficiary is entitled to benefit and they become lost to the plan, then those benefits will be redistributed into the plan to be then reinstated if the person's ever found. So it all stays in the pot. It all stays in the pot, correct, Your Honor. And so that's why in this situation, if they're a former employee thinking they're entitled to something, why is it such a strange phenomenon to say come to the plan, not to the corporation, but come to the plan that was holding these things and say, I was entitled to these things. Please look at paragraph 7 of your plan and reinstate them. That's all we're saying. And that you can't then, by artful pleading, take that and dress it up and say, really there are all these tort claims that we now have.  Thank you, Your Honor. All right. Judge Prakerson, you started out with the question what happened here. We laid it out in the complaint, and I think the three judges on the panel understand that stock was issued in the name of these people. It was then transferred from the corporation to a third party, eventually to the controller, where it was sold. Along the way, there were different mileposts that required the corporation to provide notice, both under the securities laws as they were transferring and holding the stock. So the stock was sold, and then what happened to the money? The people tried to claim what's left of it. What happened to the money? Did the corporation, did the ATE put the money in its pockets? The money is, and this is the essence of the unclaimed property law, the stock is transferred to the state. The state then is supposed to provide notice to reunite the stock to the people, and at some point the state then sells the stock, and then what is left of the stock, the original investment, is returned to the people, and when they claim it, they then have to pay taxes, capital gains. There was, you know, when the corporation issued the stock 20 years ago to these people, they were supposed to do things like comply with IRS 1099 obligations. They were supposed to tell the people that they were getting their stock. Instead, they told them nothing. As counsel correctly noted, they gave them no information. They basically broke every rule in the book. Now, before they filed this lawsuit, the plaintiffs went to the corporation, and they said, give us our stock back, and the corporation said no. All right. So they're now saying, as I understand it, you can go to the plant and get your stock back. So what's then? I think that's because they're maneuvering us into a blind alley in this kind of bizarre spin on ERISA, removing it after they've denied it the benefits, removing it, and then trying to steer us into an alleyway where they know we'll get nothing. The stock was already delivered by the corporation to the controller, then sold the stock. It's gone. It's dissipated. What are they going to manufacture new shares and give them to these people? They'd have to dilute all the other shareholders' stock. Public policy. I'd like to touch on that very briefly. The public policy set out in Western Union Telegraph Company v. City of Davenport, 97 U.S. 369. You're saying that if one of your clients or a member of that class went to the trustee of the plant and said, oh, I'm here, I'm alive, I'm not lost, reinstate my benefits, that they'd just be turned away? It's an impossibility. How would the plant administrator give them their stock back? It's already gone from the corporation. They'd have to dilute everyone else in the plant and say, okay, well, we'll dilute everyone else so you can have another round of stock. Let's go back to Judge Parnagia's questions earlier in terms of what we did with this case at this point. You now have a federal securities claim in that case. Do you – even if we were to go look at the complaints the way it was originally and remand the original case, presumably if you leave the federal securities claim in there, they're going to just remove it the next day. So it may be that unless you tell us that you're going to remove the federal securities claim and leave it out permanently, we should just go forward in federal court. Well, we will remove the federal securities claim. I think the opposing counsel already said that they would just move to dismiss that claim anyway. It would be a jurisdictionally defective complaint if it moved forward. What would be the point of expending the judicial resources to keep the complaint in federal court when the opposing counsel already said it's deficient? Well, you say it isn't. That's why. Well, I would just simply strike it. And as I said, initially it was removed. I wasn't the counsel at the time, but it was removed on this crazy ERISA notion. And all the claims are state securities. Well, I mean, the other thing, of course, is that if you do go forward in state court, you're going to be doing it around an ERISA preemption problem. And it's going to limit the nature of the litigation because if you start, as I say, the complaint may stand up without ERISA, but if you start litigating the case in a way that it does turn into a claim for benefits under the plan, you're going to get removed again. I disagree with you. The problem with the – and this is – we're still at the inception of this case. This is here on de novo review. We've done no discovery into who the class members are. We allege that they were former employees, employees, and non-employees. So under Abraham, I don't know how you're going to remove it since the class is composed of non-employees. I also think Judge Berzon, you pointed out that this may not even be an ERISA plan to begin with. It's an ESOP, an Employee Stock Option Plan. Well, ESOPs are usually ERISA plans. Regardless, the stock was moved out of the plan. It's gone. How can they unring the bell? I take it, though, if they are right that this is really an ERISA claim, it looks like your federal securities claim has no basis anyway, right? Because you can't have both, can you? Well, this was filed as a state action for violation. No, but it's not what it is now. It's also a federal action today. Well, they removed it on this ERISA preemption clause. I understand. It doesn't relate to ERISA in any way. It was based on stock violations. I understand. But if you were wrong about that, then your federal securities claim falls too, correct? Except that I would simply cite the cases that deal with the mishandling of stock, and there's probably 50 U.S. Supreme Court and California Supreme Court cases. Thank you for understanding what I'm saying. If, indeed, you were properly removed on ERISA, and if, indeed, this is a preempted ERISA case, that's what it is, then your federal securities claim would have to fall also, wouldn't it? Because you can't have both. You're saying that if they were to succeed on ERISA preemption, then the federal securities claim would fall as well. Is that what you're saying? Would it not? Because ERISA ---- And I will explain why. Explain. Because the whole reason that Verizon exists is because of the securities laws. If I were to say there's a chicken and egg scenario here, the chicken or the securities laws that form and allow Verizon to exist with its shareholders. You can't then bring in ERISA at a later date and say, well, no, ERISA then preempts all of the federal and state securities laws that guide the corporation, its bylaws, and its securities ownership. I started to say I wanted to correct you. I guess it strikes me that the law is that if one has a, let's call it securities claim, and the claim really is the securities, I haven't been treated properly through my ERISA plan, and we're assuming for the moment that's what it is, then the federal securities law says nothing about that case. You can't bring a federal securities action. You have to bring an ERISA action. Right? You're struggling, Judge, you're struggling because they've tried to, they've rewritten the complaint and tried to cast it as an ERISA complaint. I'm not struggling. I simply like to cite a couple cases. One thing about you, you struggle with a nice smile. Thank you. Thank you. You're struggling. And I'm just trying to figure out what's going on here, and I just, you know, wonder, well, you know. The judge's point is simply that the interest that one holds in an ERISA plan is not subject to the securities law. So if, in fact, we are talking about a right to a benefit under an ERISA plan where they're mutually exclusive, it can't be subject to the securities law. That's it. The problem, to answer the question, the problem that I have is that the stock was issued. It was held in their names. They would like now to bring it back within this ERISA plan, but it was already put out in circulation and transferred to different parties. And now they would like the shareholders, the minority shareholders, to go back to the ERISA plan, which were pretty far afield from ERISA at this point, were very far removed. And we're dealing with an independent corollary here, which are the securities laws. They're parallel tracks on the railroad. They're two separate areas. I thought we were dealing with chickens and eggs, not railroads. If I could close with that. You don't put the egg on the rail. Yes, Your Honor. The ‑‑ I think recently in Cramond v. Cohen, Lexis, number 14380, you likened ‑‑ you referred to a case, Schneider, and you said, it's no different from holding a corporation liable when it gives away someone's shares under the same circumstances. Which is that? That's the Ninth Circuit. Oh, okay. Hurley v. Southern California Edison. Must be right. 183, Fed Second, 125 at 130-131. We're talking about the general principle that property cannot be transferred without a person's assent. The maintenance of that principle is essential to the peace and safety of society, and the insecurity which would follow any departure from it would cause far greater injury than any which can fall. In cases of unlawful appropriation of party upon those who have been misled and defrauded. That's a wrongful transfer of stock case. That's the United States Supreme Court, 1878. That is the public policy that we're talking about. I'm over time by one minute and 20 seconds. If there's any other further questions, I'll just submit. Anything further? No. Thank you. Have a good day, and we'll take a ten‑minute recess. Applause.
judges: Pregerson, Fernandez, Berzon